CAROLINE E. WHEELER, APPELLANT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, RESPONDENT.

67  639
37ap114

*Fire caused by a passing locomotive — evidence — source of fire — locomotive identified— proof of its condition — emission of sparks after the fire.*

In an action against a railroad company to recover for injury to property by a fire, alleged to have been started by sparks emitted from a locomotive, evidence that it was possible for such sparks to reach the burned building, and of facts tending to show that the fire originated from that source, is not admissible until preliminary testimony has been introduced tending to exclude the probability that the fire originated from any other source.

*Semble,* that direct evidence tending to show that there was no other cause of the fire, except sparks from the locomotive, is unnecessary when the facts of the case indicate that the fire probably originated from that cause.

The evidence in such an action showed that a fire started on the roof of a barn, near the railroad, in the middle of a summer day, a few minutes after a freight train had passed, with the wind blowing from the track towards the barn, but it did not appear that anyone saw sparks emitted from the locomotive while passing the premises, and persons were in the barn when the fire occurred:

*Held,* that it might be assumed that no fire or light would be used in the barn at that time, and that if a match had been dropped or used therein a fire originating therefrom would not have started in the roof, and hence that the evidence tended to show that the fire was started by the locomotive.

That the plaintiff was entitled to have this evidence submitted to the jury, if he also produced any sufficient evidence tending to show negligence on the part of the defendant company.

General evidence that engines on a railroad had frequently emitted sparks or dropped cinders, is not competent when the engine that caused the fire is identified, unless it is also shown that that particular engine is of similar construction, state of repair and management to those which are shown to have emitted sparks or cinders.

In the absence of evidence that anyone saw sparks emitted from the engine, which is claimed to have started a fire, or of proof of its causing any fires or emitting any large sparks prior to the fire in question, it is incumbent on the plaintiff to show an improper condition of the spark-arrester, or a defect in the engine that might have caused the fire.

In such a case, where the burden rested upon the plaintiff to show that the engine was out of repair, it was shown that the engine had the best known appliances to arrest sparks, and that the spark-arrester was examined and found in good repair a few days before and a few days after the fire.

*Held,* that evidence that three or four weeks after the fire sparks were emitted from the engine and caused a fire, it not appearing that they were large sparks,

or such as are not emitted from an engine with the best known appliances in the best condition, and evidence that three days after the fire one large spark was emitted from the engine, could not properly be submitted to the jury as evidence that the engine was out of order at the time of the fire.

APPEAL by the plaintiff, Caroline E. Wheeler, from a judgment of the Supreme Court, entered in the office of the clerk of Columbia county on the 4th day of May, 1892, in favor of the defendant for costs, on a nonsuit and dismissal of the complaint, ordered at the Columbia Circuit, at the close of the plaintiff's case.

The action was brought to recover damages from the defendant, the New York Central and Hudson River Railroad Company, as lessee and operator of the New York, West Shore and Buffalo Railroad, for the destruction of certain buildings, the property of the plaintiff, by the negligent emission of sparks from its locomotives.

*J. Rider Cady*, for the appellant.

*Ashbel Green* and *F. L. Westbrook*, for the respondent.

PUTNAM, J.:

Plaintiff's buildings were destroyed by fire on June 19, 1890, in the afternoon, between the hours of twelve and one o'clock. Defendant's local freight train, drawn by engine No. 82, had passed fifteen or twenty minutes before. Plaintiff's buildings stood on the easterly side of and very near defendant's track, and the wind was blowing from the west to the east. The fire started on the roof of plaintiff's barn towards the railroad. Some of defendant's employees, at the time, were in the yard adjacent to the building, but it does not appear that anyone saw sparks emitted from the defendant's engine while passing plaintiff's premises.

Plaintiff contends that there was evidence which should have been submitted to the jury tending to show that the fire occurred on account of the negligent emission of sparks from defendant's said engine. The trial judge thought otherwise and nonsuited the plaintiff, deeming that there was not sufficient evidence to show that defendant's engine caused the fire, or that it was not properly constructed to prevent the emission of sparks.

I regard the case as a close one, and have reached a conclusion with considerable hesitation.

It is held that in such an action as this, and under such circumstances, after testimony has been produced tending to exclude the probability that the fire originated from any other source, evidence may be given showing that it was possible for the sparks from the engine to reach the burned building, and facts tending to show that the fire originated from that source and no other. (Am. and Eng. Encyl. of Law, vol. 8, pp. 7, 8, and notes; *Crist* v. *Erie Ry. Co.*, 1 T. & C., 435; 58 N. Y., 638; *Sheldon* v. *The Hudson R. R. R. Co.*, 14 id., 218; *Field* v. *N. Y. C. R. R. Co.*, 32 id., 339; *Hinds* v. *Barton*, 25 id., 547.)

In this case it is not clear that plaintiff produced the preliminary proof held necessary by above and kindred cases. Although plaintiff's husband and her hired man were inside the building where the fire originated on the day it occurred, neither were examined with a view of showing that the fire could not have occurred by some act of theirs inside of the barn. It was not shown that they did not use a match within the building before the fire, as to light a pipe or otherwise. It was not shown that children or other persons were not within the barn previous to the fire. In fact, no direct evidence was given by plaintiff tending to show the improbability of the fire originating from some cause other than from defendant's locomotive. But I am inclined to think that *direct* evidence tending to show that there was no other probable cause of the fire, except sparks from defendant's engine, was unnecessary, when the facts of the case indicate that the fire probably originated from that cause.

The fire was in the summer time, in the middle of the day, and when several men were in the yard adjoining the building. It started, a few minutes after defendant's train passed up the road, on the roof towards defendant's track, the wind blowing from the direction of the railroad toward the barn. It may be assumed that on the nineteenth of June, and between twelve and one o'clock in the afternoon, no fire or light would be used in the barn. If a match had been dropped or used in the building, a fire originating therefrom would not have started in the roof.

I think, therefore, the evidence tending to show that the fire was started by defendant's engine, that the plaintiff, within the authorities cited above, was entitled to have that evidence submitted to the

jury if she also produced any sufficient evidence tending to show negligence on the part of the company. (See *The Lackawanna and Bloomsburg R. R. Co.* v. *Doak et al.*, 52 Pa., 379.)

Assuming that defendant caused the fire in question, it remains to be considered whether there was testimony given that said engine No. 82 was not in proper condition at the time of the fire, which the trial judge should have submitted to the jury.

Defendant was not responsible for the fire if it used proper care. It had the right to run its locomotives at all times on its track, provided they were in proper condition. (*Collins* v. *N. Y. C. and H. R. R. R. Co.*, 5 Hun, 506; 71 N. Y., 609.) And it was for the plaintiff to show, by evidence, the defect, if any existed, in defendant's engine. (*Cosulich* v. *S. O. Co.*, 122 N. Y., 123.)

The only direct testimony as to the condition of said machine was given by the witness Fisher. He testified it was in first-class condition two or three days before the fire; that the spark-arrester was then examined as it was a few days after the fire, and was found in good repair on each occasion.

The fact that large cinders were found on defendant's track and on plaintiff's premises twenty-five paces therefrom at or about the time of the fire, does not show that the engine was not in good repair, because it is not shown that such cinders came therefrom. In this case, plaintiff has identified the engine which caused the fire. No other engine of defendant's is shown to have passed the burned building at any time near the time of the fire. In cases where it is probable that some engine of a railroad company has started a fire, and several are shown to have passed at or about the time, evidence that engines on that road have frequently dropped sparks or cinders may be competent. (*Sheldon* v. *The Hudson R. R. R. Co.*, 14 N. Y., 218.)

But such evidence is not competent where the engine that caused the fire is identified, unless it is also shown that such machine is of similar construction, state of repair or management to those which are shown to have emitted such sparks or cinders. (*Gibbons* v. *Wis. Valley R. R. Co.*, 58 Wis., 335; 13 Am. and Eng. R. R. Cases, 469; *Boyce* v. *Cheshire R. R. Co.*, 42 N. H., 97.)

The court cannot presume defendant negligent for using an old engine to draw its freight trains, or one in which it was difficult to keep

up steam, in the absence of competent testimony showing its spark-arrester defective. We should not imagine that because an engine is not new, and is not perfect as to its capacity for generating steam, that its spark-arrester is out of order.

Defendant's engine was shown to have the best known appliances to prevent the emission of sparks, and, as we have shown, the only witness sworn as to its condition testified that it was in good state of repair before the fire and when examined two or three days afterwards.

We must remember that this case is not like those where the plaintiffs have been able to show, prior to a fire, that an engine has emitted large sparks or caused frequent fires. In such cases it has been held in some instances that such emission of sparks and fires was some evidence of a defective engine, the effect of which was to throw upon the company the burden of showing that its locomotives were in good condition. In this case no one saw any sparks emitted from engine No. 82 at the time of the fire, nor was there any proof of its causing any fires or emitting any large sparks prior to the fire in question. It was then incumbent on the plaintiff to show an improper condition of its spark-arrester or a defect in the engine that might cause the fire.

The only testimony offered by the plaintiff tending to show a defect in the spark-arrester of engine No. 82, that I am able to discover, was its emitting sparks on two occasions *after* the fire in question.

The occasion testified to by Van Valkenburg, when a car load of hay was burned, occurred some time after the fire, I think three or four weeks. Nor does it appear that the fire which destroyed the hay was caused by *large sparks*, and not by such as are emitted from an engine with the best known appliances, in the best condition. The witness, Lampman, testified to another occasion, not as suggested by plaintiff's counsel on June twentieth, the day after the fire, but *about the twentieth* of June — the twentieth or the twenty-second, he is not positive which. He says that a large coal of fire was then emitted from the engine and fell into his wagon three rods distant, setting fire to the straw.

Plaintiff's contention is that this large spark, described by Lampman, could not have been emitted through a spark-arrester in proper

condition; and although Fisher testified that the arrester in No. 82 was in good condition both before and after the fire, yet, by this testimony of Lampman's, a question of fact was raised which could only be properly determined by a jury.

I think that the learned trial judge took the correct view of this testimony. As it was for the plaintiff to show defendant's negligence, if any, and as Lampman was uncertain whether the occurrence at Coxsackie was on the twentieth or twenty-second, we should assume it occurred on the twenty-second, three days after the fire. It would not have been proper for the court to have allowed the jury to guess that the occurrence was on the twentieth, when the witness himself did not so testify. I think the fact that three days after the fire one large spark was emitted from defendant's engine could not be properly submitted to the jury as evidence that defendant's engine was out of order three days before. There was ample time in the three days for some accident to have happened to the spark-arrester, or for a hole to have been worn in the netting. Counsel for the plaintiff suggests that a witness testified that no alterations or changes had been made in the engine from June first to September first of that year. Such evidence, however, should not be deemed as meaning that changes may not have occurred during the time mentioned to the defendant's engine by use or wear. It has been held, in such an action as this, that evidence that defendant's engine, *on the same trip and the same day*, caused other fires, was competent as tending to show the defective condition of the engine. (*Slossen* v. *B. C. R. and N. R. Co.*, 60 Ia., 215.) But here the emission of the large spark was several days after the fire.

If the affirmative had been with the defendant as to the condition of the engine, and it had produced evidence that the spark-arrester was in good condition, both before and after the fire, it might have been proper for the plaintiff to have shown in rebuttal the emission of the spark after the fire. Such was the case of *Loring* v. *W. and N. R. R. Co.* (131 Mass., 469).

Plaintiff had the burden of showing that on June nineteenth defendant's engine was out of repair in such a way as to cause the fire that destroyed her building. He failed to produce any evidence from which the jury would have been authorized to find that such

locomotive was out of repair until some days after the fire. The then defective condition of the spark-arrester of said engine may have existed prior to the fire which injured plaintiff, or it may, from wear or accident, have developed since the fire. It was for the plaintiff to show the defect prior to the fire. This he failed to do.

It would not have been proper for the court below to have allowed the jury *to conjecture* as to the time the spark-arrester became out of order. (See *Searles* v. *Manhattan Ry. Co.*, 101 N. Y., 661; *Reiss* v. *N. Y. S. Co.*, 128 id., 107.)

The court below, I think, did not err in excluding the evidence offered by plaintiff to show that prior to the fire, and in the vicinity of the premises where the fire occurred, sparks and cinders were found on the line of defendant's road and on plaintiff's premises. As we have seen, plaintiff identified the engine that caused the fire, and hence the evidence in question was properly excluded by the court.

I, therefore, conclude that the judgment should be affirmed, with costs.

MAYHAM, P. J., and HERRICK, J., concurred.